# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>CATARINO MINERO-ROJAS,<br>　　　　　　　　　　Defendant. | Case No. 11cr3253 BTM<br><br>**ORDER DENYING MOTIONS TO DISMISS COUNT ONE PURSUANT TO SECTION 1326(d)** |

Defendant Catarino Minero-Rojas ("Defendant") has filed motions to dismiss Count One of the Indictment pursuant to 8 U.S.C. § 1326(d) on the grounds that his 1997 removal order and 2002 and 2007 expedited removal orders are invalid. For the reasons discussed below, Defendant's motions are **DENIED**.

## I. BACKGROUND

A. Immigration Background

Defendant, a citizen of Mexico, was born in 1958. Defendant resided in California as a legal permanent resident from 1970 until his deportation in 1997. His mother, Cecilia Rojas, was born in the United States and was a United States citizen. At the time of his deportation in 1997, Defendant had four United States citizen children and seven siblings who were legal permanent residents or United States citizens living in the United States. (Minero-Rojas Decl. (Def. App. K), ¶ 11.)

In 1997, Defendant was ordered to appear before an immigration judge to show why he should not be removed under INA § 237(a)(2)(B)(i) for having been convicted of violating a law or regulation of a state, the United States, or a foreign country relating to a controlled substance, other than a single offense involving possession for one's own use of 30 grams or less of marijuana. (Def. App. P.) At the deportation hearing on May 29, 1997, Defendant admitted that he had been convicted on June 26, 1995, of possession of cocaine. (Def. App. L at 76. ) The immigration judge ("IJ") ordered that Defendant be removed to Mexico. This removal order was subsequently reinstated several times.

In 2002 and 2007, Defendant was placed in expedited removal proceedings and ordered removed to Mexico. In 2002, he was found inadmissible because he falsely represented himself as a lawful permanent resident by presenting a counterfeit Form I-94. (Def. App. N.) In 2007, Defendant was found inadmissible for misrepresenting his identity and not having the necessary documents to enter the United States. (Def. App. S.)

On July 6, 2011, Defendant applied for admission from Mexico into the United States and was arrested. On July 27, 2011, an indictment was filed charging Defendant with three counts: (1) Attempted Entry after Deportation, in violation of 8 U.S.C. § 1326(a) and (b); (2) Fraud and Misuse of Visas, in violation of 18 U.S.C. § 1546(a); and (3) Aggravated Identity Theft, in violation 18 U.S.C. § 1028A.

B. Criminal History

Defendant has an extensive criminal history as set forth below.

| APPROX. DATE OF ARREST | CONVICTION | SENTENCE |
|---|---|---|
| Jan. 1977 | misdemeanor drunk driving on highway | 6 months of probation (Gov't Ex. 2, p. 20.) |
| Jan. 1982 | trespass - Cal. Penal Code § 602(j) | 1 year probation (Gov't Ex. 2, p. 20) |
| May 1984 | petty theft - Cal. Penal Code § 484(a) | 5 days in jail (Gov't Ex. 2, p. 21) |

| Jan. 1986 | under the influence of cocaine - Cal. Health & Safety Code § 11550(a) | 90 days in jail (Gov't Ex. 2 p. 21) |
|---|---|---|
| June 1988 | grand theft of property - Cal. Penal Code § 487.1 | 90 days in jail, 180 days of probation (Gov't Ex. 2, p. 21) |
| Oct. 1988 | vandalism - Cal. Penal Code 594(a) | 30 days in jail, probation terminated (Gov't Ex. 2, p. 21) |
| Feb. 1989 | use/under the influence of controlled substance - Cal. Health & Safety Code § 11550(a); felony driving under the influence of alcohol or drugs - Cal. Veh. Code § 23152(a) | 365 days in jail concurrent (Gov't Ex. 2, p. 22; Gov't Ex. 3) |
| March 1992 | first degree robbery - Cal. Penal Code §§ 211 and 667.5(b) (enhancement) | 3 years in prison (Gov't Ex. 2, p. 22; Gov't Ex. 4) |
| March 1995 | possession of a controlled substance (cocaine) - Cal. Health & Safety Code §§ 11359(a) and 667.5(b) | 32 months in prison (Gov't Ex. 2, p. 23; Gov't Ex. 5) |
| August 1997 | use/under the influence of controlled substance - Cal. Health & Safety Code § 11550(a) | jail sentence of unknown length (Gov't Ex. 2, p. 23) |
| Sept. 1998 | possession of controlled substance (cocaine) - Cal. Health & Safety Code § 11350(a) | 16 months in prison (Gov't Ex 7) |
| Jan. 2001 | corporal injury on a spouse - Cal. Penal Code § 273.5(a) | 4 years in prison (Gov't Ex. 2, p. 24; Ex. 8) |
| Aug. 2003 | second degree commercial burglary - Cal. Penal Code § 459 | 2 years in prison (Gov't Ex. 9) |
| March 2004 | possession of paraphernalia in prison - Cal. Penal Code § 4573.6 | 2 years in prison (Gov't Ex. 6) |
| May 2007 | illegal entry - 8 U.S.C. § 1325 | 48 months in prison (Gov't Ex. 10) |

## II. DISCUSSION

Defendant contends that his 1997 removal order and 2002 and 2007 expedited removal orders are invalid due to various due process violations during the proceedings. As discussed below, the Court finds that any defects in the 1997, 2002, and 2007 proceedings did not result in prejudice to Defendant. Therefore, Defendant's collateral attack on the

removal orders fails.

A. <u>Law Governing 1326(d) Collateral Attacks</u>

To sustain a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. <u>United States v. Ubaldo-Figueroa</u>, 364 F.3d 1047, 1048 (9th Cir. 2004). An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. <u>Id.</u> When the alleged defect in the deportation proceedings consists of the IJ's failure to inform the defendant regarding his possible eligibility for relief from deportation, in order to establish prejudice, the defendant must only show that he had a plausible ground for relief from deportation. <u>United States v. Arce-Hernandez</u>, 163 F.3d 559, 563 (9th Cir. 1998).

An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order. <u>United States v. Arrieta</u>, 224 F.3d 1076, 1079 (9th Cir. 2000). However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." <u>United States v. Muro-Inclan</u>, 249 F.3d 1180, 1183 (9th Cir. 2001). "[A] waiver is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him the opportunity to develop the issue." <u>Id.</u> at 1182 (internal quotation marks omitted).

B. <u>Defendant's 1997 Removal</u>

Defendant contends that his 1997 removal was fundamentally unfair because: (1) the IJ failed to provide Defendant with a meaningful opportunity to prove derivative citizenship,

and the Government therefore did not meet its burden to prove that Defendant was an alien; (2) the IJ never informed Defendant of his eligibility for 212(c) relief; and (3) the IJ did not obtain a valid waiver of Defendant's right to appeal. None of these grounds supports invalidation of the 1997 removal order.

1. Derivative Citizenship

In removal proceedings, the Government bears the burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence. Chau v. INS, 247 F.3d 1026, 1029 n. 5 (9th Cir. 2001). "However, evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the respondent or deportee to prove citizenship." Id. If the deportee "can produce substantial credible evidence in support of his or her citizenship claim," the burden shifts back to the Government. Id.

Defendant admitted that he was born in Mexico. (Def. App. L at 76.) Thus, there was a rebuttable presumption that Defendant was an alien. Defendant did not produce substantial credible evidence that he was a derivative citizen.

Defendant argues that the IJ knew that he was possibly a derivative citizenship based on the fact that his mother was born in Texas, and, therefore, should have conducted further inquiry into the matter or provided Defendant with an opportunity to present evidence of derivative citizenship. However, the transcript of the removal proceeding reveals that the IJ actually raised the possibility of derivative citizenship and, at several points during the hearing, urged Defendant to pursue the matter. Defendant declined to pursue the citizenship claim because he felt that it would be futile:

JUDGE: You ever looked into the possibility you were a citizen through your mother?

MINERO-ROJAS: I imagine so, but I guess I'm just going by the instincts of what my record is gonna probably be, you know. You know I'm gonna be accountable for my record you know.

JUDGE: Well, if you can establish a citizenship claim your record doesn't matter because if you're a citizen you can't be deported or removed. So you got a couple of possibilities if you want to try to fight them.

| | |
|---|---|
| 1 | MINERO-ROJAS: No, I'd rather not. |
| 2 | JUDGE: You sure about that? |
| 3 | MINERO-ROJAS: Yeah. |
| 4 | . . . . |
| 5 6 7 | JUDGE: . . . You can make a citizenship claim anytime. You could be deported a hundred times if you can show you're a citizen and if you come back with your papers they gotta let you in. So I'd look into that if I were you, the citizenship through your mother. |
| 8 | MINERO-ROJAS: Yeah, see, I have a brother, or somebody, a relative that have done, been through the same process as I have, right. |
| 9 | JUDGE: Yeah. |
| 10 11 | MINERO-ROJAS: And they've used this as their defense, and even before this law came in, these new laws they had no, they didn't beat it you know. They got theirs taken away too. |
| 12 | JUDGE: Yeah, well. |
| 13 | MINERO-ROJAS: And they used my mom as a reference. |
| 14 | JUDGE: Mmm-hmm. |
| 15 | MINERO-ROJAS: But um so I don't want to waste no more time, you know. |
| 16 | JUDGE: Yeah I understand that. |
| 17 | MINERO-ROJAS: I just want to get on and be free you know. |
| 18 19 | JUDGE: Ok well what I'm telling you is if you think you want to come back and I'm pretty sure you do and you want to do it the right way without risking the immigration service, look into the citizenship thing. Alright? |

(Def. App. L at 78-79.)

The IJ properly informed Defendant about the possibility of a derivative citizenship claim and the benefits of being recognized as a citizen. The IJ was not under a duty to force Defendant to follow up on the matter.

Moreover, Defendant has not established that he had a plausible claim for derivative citizenship. To prevail on his claim for derivative citizenship, Defendant would have had to establish: (1) his parents were married at the time of his birth, and his mother had been physically present in the United States for 10 years prior to his birth, at least five of those years being after she was 14 years old (8 U.S.C. § 1401(a)(7) (1958)); or (2) his parents

were not married at the time of his birth, and his mother had been continuously physically present in the United States for twelve months at any time prior to Defendant's birth (8 U.S.C. § 1409(c) (1958). Defendant has not made any showing with respect to these requirements.

Defendant argues that his mother now has Alzheimer's and that the IJ deprived him of the opportunity to investigate and gather evidence regarding his claim. Even if the Court were to assume that the IJ should have done something more to encourage Defendant to pursue the derivative citizenship claim, the Court is not aware of any authority supporting the proposition that mere lost opportunity to investigate a claim provides a basis for collateral attack. Defendant's speculation that he may have been able to uncover some evidence supporting a claim for derivative citizenship falls short of establishing the required prejudice.

2. 212(c) Relief

Defendant correctly points out that the IJ did not inform him of his eligibility for 212(c) relief. In 1992, when Defendant pled guilty to robbery, robbery was not classified as an aggravated felony. Therefore, even though the offense was later classified as an aggravated felony, Defendant's conviction did not bar him from 212(c) relief. See INS v. St. Cyr, 533 U.S. 289, 326 (2001). The issue before the Court is whether Defendant had a plausible claim for 212(c) relief. The Court concludes that he did not.

Under 212(c), the Attorney General may grant discretionary relief from removal to lawful permanent residents who satisfy the statute's seven-year residency requirement. See 8. U.S. C. § 1182(c). In exercising its discretion, the BIA or IJ must consider all of the facts and circumstances and balance the social and humane considerations weighing in an alien's favor against the adverse factors. In re Edwards, 20 I. & N. Dec. 191, 195 (BIA 1990). Positive factors include family ties within the United States, residence of long duration in the United States (particularly when residence began at a young age), evidence of hardship to the petitioner or petitioner's family if deportation occurs, service in the United States armed forces, a history of employment, the existence of property or business ties, evidence of value

and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to the petitioner's good character. Id. Negative factors include the nature and underlying circumstances of the deportation at issue, additional significant violations of the immigration laws, the existence, seriousness, and recency of any criminal record, and other evidence of bad character or undesirability as a permanent resident. Id.

"As the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." In re Marin, 16 I & N Dec. 581, 584 (BIA 1978). A single serious crime or a pattern of serious criminal conduct can trigger a need to show unusual or outstanding equities. Edwards, 20 I. & N. Dec. at 195-96. A showing of unusual or outstanding equities does not compel a favorable exercise of discretion; there are cases in which "the adverse considerations are so serious that a favorable exercise of discretion is not warranted even in the face of unusual or outstanding equities." Id. at 196.

In this case, the strongest factors weighing in favor of 212(c) relief are Defendant's length of residence in the United States (from 1970-1997) and Defendant's family ties. Defendant's mother lived in the United States as did seven of Defendant's siblings, who were permanent residents or United States citizens. (Minero-Rojas Decl. (Def. App. K), ¶ 11.) Defendant also had four United States citizen children who, at the time of the removal hearing, were aged 21, 17, 15, and 9. (Def. App. L at 77.)

There do not appear to be any other significant positive factors in Defendant's favor. Unlike the defendant in United States v. Ubaldo-Figueroa, 364 F.3d 1031, 1051 (9th Cir. 2004), Defendant has not presented evidence that he played an active role in the education or upbringing of his children. There is no evidence that Defendant financially supported his children, his mother, or siblings. There is also no evidence of hardship that would result from Defendant's deportation. In a letter dated January 31, 2008, Romelia Sanchez, Defendant's sister states, "Throughout the years, our mother faced several illnesses that required assistance. Catarino was always there to care for our mother through encouragement and unconditional support. We could always depend on Catarino to be there for his family."

(Def. App. Q.) Although Defendant may have been a comfort to his mother during times of illness, there is no evidence that he was the only or primary source of support for his mother or that his absence would cause her hardship beyond the normal pain of separation from a child.

On the other side of the equation, adverse factors include Defendant's serious criminal history and lack of rehabilitation. Defendant was constantly in criminal trouble from 1982 until the time of his 1997 deportation. His crimes became more serious as the years progressed, culminating in the conviction for first-degree robbery in 1992 and the conviction for possession of cocaine in 1995. Defendant's criminal history shows that Defendant did not learn from his mistakes and was not rehabilitated. See Ayala-Chavez v. INS, 944 F.2d 638, 642 (9th Cir. 1991) (finding reasonable the BIA's conclusion that Ayala's repeated convictions for driving offenses and his eventual drug conviction showed that Ayala had disregard for the laws of the United States and did not learn from the less serious convictions.)

Even if Defendant's family ties within the United States and length of residence constitute unusual or outstanding equities, they do not outweigh the adverse factors. In cases involving repeated and serious criminal violations with no showing of rehabilitation, the BIA has held that the factors of long residence and substantial family ties do not warrant a favorable exercise of discretion. For example, in Edwards, 20 I. & N. Dec. at 197-98, the BIA held that 212(c) relief was not warranted in light of the respondent's 10-year pattern of criminal misconduct, including controlled substance distribution offenses, even though the respondent had resided in the country for approximately 22 years, was married to a United States citizen, had four United States citizen children (including an autistic child), and had a mother and siblings who resided in the country. Similarly, in In re Coelho, 20 I. & N. Dec. 464 (BIA 1992), the BIA held that 212(c) relief was not warranted because the seriousness of the respondent's two convictions (involving possession of cocaine with intent to distribute) outweighed the positive factors of respondent's 23 years of residence in the United States and family ties including six siblings living in the United States, a mother who lived in the

United States and was primarily supported by the respondent, and two United States citizen children who were 5 and 7 years old. See also Johnson v. INS, 971 F.2d 340 (9th Cir. 1992) (affirming BIA's decision to deny 212(c) relief to permanent resident alien who was convicted of transporting drug proceeds in violation of the Travel Act even though she was married to a United States citizen and had a United States citizen child); United States v. Gonzalez-Valerio, 342 F.3d 1051 (9th Cir. 2003) (holding that defendant, who had multiple convictions including lewd acts on a child and spousal abuse, had not established a plausible claim for 212(c) relief based on his declaration that he had lived in the United States for 16 years, that his family lives in the United States, and that he is attached to them).

Defendant has not established the existence of outstanding equities that outweigh his serious criminal history. Therefore, Defendant has not demonstrated that he had a plausible claim for 212(c) relief, and has not shown that he suffered prejudice as a result of the IJ's failure to inform him of his eligibility for such relief.

### 3. Waiver of Appeal

Defendant argues that his due process rights were violated because the IJ never obtained an individual waiver of Defendant's right to appeal. The IJ obtained a "mass waiver" of the right to appeal from the group of respondents at the beginning of the master calender hearing, but did not discuss the right to appeal during Defendant's individual hearing.

"Mass silent waivers" of the right to appeal removal orders do not comport with due process. United States v. Lopez-Vasquez, 1 F.3d 751, 754-55 (9th Cir. 1993). However, "[p]rocedural flaws alone do not invalidate a deportation hearing." United States v. Ahumada-Aguilar, 295 F.3d 943, 950 (9th Cir. 2002). Defendant must establish that he was prejudiced as a result of the due process violation. Id.

As discussed above, Defendant has not established that the IJ erred by not giving him the opportunity to develop a derivative citizenship claim. Moreover, Defendant has not shown that he had a plausible derivative citizenship claim. Defendant has also failed to

establish a plausible claim for 212(c) relief. Absent meritorious arguments to raise on appeal, Defendant suffered no prejudice as a result of the improper waiver.

C. <u>2002 and 2007 Expedited Removals</u>

Defendant also challenges his 2002 and 2007 expedited removal orders. The Court finds that these removal orders are valid as well.

Defendant points to technical violations of 8 C.F.R. § 1235.3(2)(b)(i), which requires:

> In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using Form I-867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the alien all information contained on Form I-867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I-867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien.

Defendant points out that with respect to the 2002 Form I-867A, Defendant's signature is on the last page, but his initials do not appear on the preceding pages, and the last page does not indicate how many pages the statement is. (Def. App. M.) The form also states that the interview was conducted in Spanish, but the form is completed in English. With respect to the 2007 form (Def. App. N), Defendant points out that the last page, which is signed by Defendant, indicates that his statement consists of one page even though there are two other pages. Defendant's initials are on the other two pages, but there is a correction to Defendant's date of birth that is not initialed by Defendant.

The Court is not convinced that the technical defects on the forms rise to the level of a due process violation. Defendant does not claim that the forms inaccurately represent his statements, nor does he claim that he was unaware of the charges against him.

Defendant also argues that given the possibility that Defendant was a derivative citizen, the officers should have informed Defendant that he could withdraw his application for admission or go before an IJ and present evidence regarding his derivative citizenship claim. However, as previously discussed, Defendant has not established that he had a plausible claim for derivative citizenship. Furthermore, it does not appear that Defendant had a plausible claim to withdraw his application for admission. As explained in <u>United States v. Barajas-Alvarado</u>, __F.3d__, 2011 WL 3689244, at * 10 (9th Cir. Aug. 24, 2011), the Inspector's Field Manual sets forth six factors an immigration officer should consider in evaluating an alien's request for permission to withdraw: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian considerations. The manual also provides, "[a]n expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations *where there is obvious, deliberate fraud on the part of the applicant*." (Emphasis added.) In 2002, Defendant was charged with presenting a counterfeit Form I-94 in the name of someone else, and in 2007, Defendant was charged with willfully misrepresenting his true identity. (Def. App. R, S.) Therefore, Defendant engaged in deliberate fraud to enter the country. In addition, Defendant had been previously removed, was not a youth or elderly, did not have poor health, and did not have humanitarian grounds for the relief. Accordingly, Defendant has not made a plausible showing that the officers would have exercised discretion in his favor and permitted withdrawal. <u>See</u> <u>Barajas-Alvarado</u>, 2011 WL 3689244, at * 10-11; <u>United States v. Lopez-Garcia</u>, 2011 WL 3855859 (9th Cir. Sept. 1, 2011).

The Court notes that it appears that even if the 1997 removal order was invalid, the expedited removal orders would still be valid. <u>See</u> <u>United States v. Garcia</u>, 2007 WL 4376173 (9th Cir. Dec. 11 2007) (holding that 1997 deportation for being present in the United States without being admitted or paroled was valid even though prior deportation

hearing was in violation of defendant's due process rights).[1] The Court is not persuaded by Defendant's argument that if it were not for the 1997 removal, Defendant would still have been a legal permanent resident and would not have been exposed to further deportation proceedings. Defendant did not have to use fraudulent means to attempt to enter into the country. Defendant could have pursued other avenues to obtain legal entry in the United States.

### III. CONCLUSION

Defendant has not established that he was prejudiced by any errors that may have been made during his 1997, 2002, and 2007 removal proceedings. Therefore, Defendant's collateral attack on the removal orders fails, and Defendant's motions to dismiss Count One of the Indictment are **DENIED**.

**IT IS SO ORDERED.**

DATED: October 13, 2011

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge

---

[1] Defendant attempts to distinguish <u>Garcia</u> on the ground that Garcia was not an LPR at the time of his original deportation. However, upon review of that docket, it appears that Garcia was an LPR at the time of his 1994 deportation. <u>See</u> Case No. 06cr221, Doc. No. 28 at 3.